**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward CENCER, Defendant–Appellant.**

**No. 95–3073.**

United States Court of Appeals,
Sixth Circuit.

Argued March 22, 1996.

Decided July 23, 1996.

**1104**

James R. Wooley, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Cleveland, OH, for plaintiff–appellee.

Jerry Milano (briefed), Friedman, Domiano & Smith, Cleveland, OH, Shawn P. Martin (argued), Cleveland, OH, for defendant–appellant.

Before: MARTIN and MOORE, Circuit Judges; JOINER, District Judge.*

MOORE, Circuit Judge.

The principal issue in this case is whether a district court may substitute jurors during a criminal trial after submission of the case to the original jury. Although such substitution runs counter to the explicit terms of Federal Rule of Criminal Procedure 24(c), we conclude that Rule 24(c) may be waived by the defendant under appropriate circumstances. We therefore affirm the judgment of the district court.

---

\* The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.  BACKGROUND

Defendant Edward Cencer was a friend and business partner of Robert Mantarro, who was the subject of a prolonged investigation by the government for cocaine trafficking and running a prostitution ring. The illegal activities were allegedly conducted through the Point Pub bar, the Taste of Italy restaurant, and the Discount Limousine Service, all owned by Mantarro in Cleveland, Ohio. Cencer apparently assisted Mantarro in managing both the legitimate and illegitimate "business" that flowed from these entities. Government witnesses testified that Cencer was involved in various drug transactions at the Point Pub and that he knowingly siphoned profits from these illegal activities into the bar. In addition, to corroborate this testimony, the government produced tape-recorded conversations between its witnesses and Cencer. Cencer, on the other hand, denied any involvement in drug activity and argued that the incriminating tape recordings were "garbled" at key points, thereby casting doubt on their probative value. Cencer's primary defense theory seemed to be that although he knew about the unlawful acts of Mantarro and the other employees, he had tried to dissuade Mantarro from allowing these acts to continue. By the time Cencer's case went to trial, Mantarro and the other suspects in the conspiracy had pleaded guilty.

After testimony by Cencer himself, the defense rested on a Friday morning. Just before closing arguments, the district court reminded the parties that two jurors had mentioned they could not stay for the following week. The court suggested allowing the two alternate jurors to sit in on jury deliberations, substituting them if that later became necessary. Both the prosecutor, James Wooley, and defense counsel, Jerry Milano, agreed that this was a good idea. The following exchange took place outside the jury's presence:

> THE COURT: As you know, on the jury there is one person who is leaving on vacation tomorrow. Someone else raised the issue of Tuesday. I don't want the jury to get in a position where they want to rush to get a verdict. How do you want to handle that?
>
> MR. MILANO: I don't know. I can't remember who the first alternate is.
>
> THE COURT: Bettie Ford. I remember the name. The lady with the hat.
>
> MR. MILANO: Good Lord, I can't picture her.
>
> THE COURT: The one with the hat.
>
> MR. MILANO: Well, judge, to solve that dilemma, if that comes to pass—because we are going to finish this morning—
>
> THE COURT: Well, yeah, but—
>
> MR. MILANO: If we don't have a verdict—if we don't have a verdict by 4:30, I'll go along with that. I don't want to ruin that girl's vacation, but I don't want to do it right now.
>
> THE COURT: How do I fit somebody in after they have already started deliberating?
>
> MR. MILANO: No, no, no, no. Oh, that's right. Yeah.
>
> THE COURT: That's my concern.
>
> MR. MILANO: Well, then I have to object to it, but I won't—no. My stipulation is worthless, because the others have already deliberated.
>
> THE COURT: Unless you want to—
>
> MR. MILANO: I would waive all rights and all that stuff.
>
> THE COURT: Unless you want to have the alternates sit in on the deliberations but not participate.
>
> MR. MILANO: That is even better.
>
> MR. WOOLEY: Yes.
>
> THE COURT: Do you waive any objection?
>
> MR. MILANO: That's all right with you, Jimmy?
>
> THE COURT: Do you waive any objection to that?
>
> MR. MILANO: Absolutely.
>
> THE COURT: That will solve the problem.
>
> MR. MILANO: Thank you so much.

Tr. at 476–78. The defense thereby stipulated to the presence of the alternates in the jury room. The jurors began deliberating on

**1106**

Friday afternoon, but they were unable to reach a verdict on all counts. At the end of the day, the jurors asked what would happen to their partial verdict once the alternates were substituted the following week. The district court addressed the jury:

> THE COURT: Members of the Jury, you inquired of the Court as to what the effect would be of some verdicts reached today with respect to the alternates who might be serving on Tuesday. The answer is that any verdicts arrived at before a complete verdict is arrived at must be concurred in by all of the jurors who are serving on Tuesday. In other words, if you reach some verdicts today with the original 12 jurors and then 2 have to leave and the alternates have to fill in, the alternates would have to agree and concur in those verdicts in order for there to be valid verdicts on Tuesday. If they do that, and if they indicate that they are agreeing with the deliberations that have occurred and that they agree with those verdicts that are reached, then those verdicts would be valid on Tuesday. Is my answer clear?
>
> A JUROR: Yes.

Tr. at 558. Defense counsel objected to the substance of this instruction, but he did not object to the court's subsequent substitution of the two jurors who had to leave. On Tuesday, the day after Columbus Day, the new jury began deliberations. It rendered a final verdict at 5:05 p.m. that same day, acquitting Cencer on two counts but convicting him on three: distribution of cocaine, conspiracy to distribute cocaine, and conspiracy to commit money laundering, violations of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, and 18 U.S.C. § 371, respectively. Cencer then brought this timely appeal.

## II. THE POST–SUBMISSION JUROR SUBSTITUTION

■ Cencer claims that the district court violated Rule 24(c) of the Federal Rules of Criminal Procedure when it allowed the alternates to sit in on the jury deliberations, and when it allowed them to take the place of two regular jurors. Rule 24(c) provides, in relevant part:

> Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties.... An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.

As this provision makes clear, the district court did not follow Rule 24(c) to the letter when it retained the substitute jurors after submission of the case to the original jury. Under the rule, alternates may only be substituted before the jury begins deliberations. Rule 24(c) does not allow alternates to sit with the jury after deliberations have started or to substitute for the regular panel. *See United States v. Olano*, 507 U.S. 725, 737, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) ("The presence of alternate jurors during jury deliberations is no doubt a deviation from Rule 24(c)."); *United States v. Quiroz–Cortez*, 960 F.2d 418, 420 (5th Cir.1992) (noting that "the rule's language and the weight of authority indicate[] that Rule 24(c) forbids" the post-submission substitution of alternate jurors); *see also* 2 Charles A. Wright, *Federal Practice and Procedure: Criminal* § 388 (1982 & Supp.1996).

■ On the other hand, it is evident that Cencer affirmatively agreed to the substitution procedure, including the presence of the alternates during early deliberations. As a result, his attempt to challenge that procedure on appeal seems questionable at best, disingenuous at worst. It could be argued that Cencer's failure to object to the procedure (aside from the supplemental jury instruction) renders the procedure reviewable only for plain error. *See Olano*, 507 U.S. at 737, 113 S.Ct. at 1779. It could also be argued, however, that Cencer deliberately waived Rule 24(c) and that the district court therefore committed no error at all, plain or otherwise. *See id.* at 732–33, 737, 113 S.Ct. at 1776–77, 1779. Although the Supreme Court in *Olano* explicitly left open the question whether the substitution provisions of Rule 24(c) might be waivable, *see id.* at 737, 113 S.Ct. at 1779, we believe the better view is that they are. Indeed, there are a number of reasons why Cencer should be deemed to

have waived, rather than forfeited, strict compliance with the terms of Rule 24(c).

First, it is important to realize that Rule 24(c) operates in conjunction with Rule 23(b), which sets forth the officially sanctioned procedure for avoiding a mistrial when one or more jurors need to be excused after deliberations have begun:

> **(b) Jury of Less Than Twelve.** Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences. Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

Fed.R.Crim.P. 23(b). Rule 23(b) thus allows the district court to have a case continue with 11 jurors, even without the defendant's consent, if one of the jurors must be excused after the jury has retired. If two or more jurors need to be excused, however, the district court needs the written stipulation of the parties. In other words, in the instant case, if Cencer had stipulated to a 10-juror verdict under Rule 23(b), there would have been no "error" for him to appeal.

Rule 23(b) was not always this way. In 1983, the rule was amended to allow the district court to proceed with 11 jurors without the parties' consent. Before that, any number less than 12 required the stipulation of the parties. *See* Fed.R.Crim.P. 23(b), 1983 advisory committee notes. In promulgating the 1983 amendment, the Advisory Committee on Criminal Rules explicitly rejected an alternative amendment to Rule 24(c), which would have allowed the district court to substitute alternate jurors for regular jurors after submission of the case. The Advisory Committee declared that there were both practical and constitutional problems with any substitution procedure, both of which would apparently work to a defendant's disadvantage: "The inherent coercive

effect upon an alternate who joins a jury leaning heavily toward a guilty verdict may result in the alternate reaching a premature guilty verdict." *Id.* (citing 8A James W. Moore, *Moore's Federal Practice* ¶ 24.05 (2d ed.1980)). More expansively, the Committee stated:

> The central difficulty with substitution, whether viewed only as a practical problem or a question of constitutional dimensions (procedural due process under the Fifth Amendment or jury trial under the Sixth Amendment), is that there does not appear to be any way to nullify the impact of what has occurred without the participation of the new juror. Even were it required that the jury "review" with the new juror their prior deliberations or that the jury upon substitution start deliberations anew, it still seems likely that the continuing jurors would be influenced by the earlier deliberations and that the new juror would be somewhat intimidated by the others by virtue of being a newcomer to the deliberations. As for the possibility of sending in the alternates at the very beginning with instructions to listen but not to participate until substituted, this scheme is likewise attended by practical difficulties and offends "the cardinal principle that the deliberations of the jury shall remain private and secret in every case."

*Id.* (quoting *United States v. Virginia Erection Corp.*, 335 F.2d 868, 871 (4th Cir.1964), *abrogated by United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

It is clear from the Advisory Committee Notes that the Committee was concerned here with only one subset of juror substitution cases—where the defendant is actually opposed to it. The 1983 amendment to Rule 23(b) did not affect the ability of parties to consent to a jury of less than 12. The amendment only gives the district court the added discretion to proceed with one less juror over the defendant's objection. Logically, then, the Advisory Committee's rejection of the substitution alternative in the course of adopting this amendment does not necessarily speak to the possibility of an outright waiver of Rule 24(c) by a defendant.

It only evidences the view that the district court should not otherwise *compel* a defendant to continue trial, after submission of the case, with 11 original jurors and one substitute juror. Indeed, nothing in the Advisory Committee's rationale suggests that the Committee even considered the option of waiver by the defendant. In criticizing juror substitution, the Advisory Committee Notes evince a concern for fairness to the defendant, yet the Notes fail to address the real possibility that a defendant might actually *prefer* in many cases to proceed with a reconstituted jury, rather than a jury of less than 12. As Rules 23(b) and 24(c) are currently written, the district court cannot substitute alternates once deliberations begin, even if the court, the government, and the defendant(s) would all prefer this route to the Rule 23(b) route—even if it would mean the difference between a jury of six and a jury of 12. (Rule 24(c) allows a maximum of six alternates.)

Although the Advisory Committee Notes raise some important questions regarding the fairness and wisdom of a substitution procedure, those questions are best addressed to post-submission substitutions performed without the defendant's consent. There does not appear to be any reason why a defendant should not be able to *choose* substitution over a less–than–12–person jury. According to Rule 23(b), a defendant can waive his right to a jury of exactly 12; according to Rule 23(a), a defendant can waive her right to a jury altogether. If defendants can waive these elements of a jury trial, it seems equally reasonable to allow waiver of Rule 24(c)'s restriction on a post-submission substitution in the jury. Indeed, the Advisory Committee's rationale, even on its own terms, seems rather unconvincing. The Committee Notes express the concern that it might be difficult "to nullify the impact of what has occurred" before the substitution, that a substitute juror might feel "intimidated" by the remaining jurors, that he or she might reach "a premature guilty verdict." Yet the Notes do not explain how Rule 23(b) comes any closer to solving the problem than substitution. If ten original jurors have deliberated and are now predisposed to convict by the time two replacements arrive, it is difficult to see how it can be any more harmful to the defendant for the two replacements to engage—or at least attempt to engage—in additional deliberations with the other ten. Whereas the greatest harm in allowing the substitution might be that the substitutes end up getting "intimidated" into rendering "premature" verdicts, Rule 23(b)'s solution only *ensures* that the 10–person jury will reach the same verdict it would otherwise have pressured—or tried to pressure—the substitutes into agreeing to in the first place. It is especially difficult to understand the Advisory Committee's categorical view that Rule 23(b) is less constitutionally problematic when we see so many instances in which defendants have explicitly been offered the option of a less–than–12–person jury and instead request or demand a post-submission substitution. *See, e.g., United States v. Quiroz–Cortez,* 960 F.2d 418, 419 (5th Cir.1992); *United States v. Huntress,* 956 F.2d 1309, 1312 (5th Cir.1992), *cert. denied,* 508 U.S. 905, 113 S.Ct. 2330, 124 L.Ed.2d 243 (1993); *United States v. Guevara,* 823 F.2d 446, 447 (11th Cir.1987); *United States v. Davis,* 608 F.2d 698, 698–99 (6th Cir.1979) (per curiam), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 602 (1980); *see also United States v. Hillard,* 701 F.2d 1052, 1055 (2d Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983) (district court substituted alternate after defendant refused to stipulate to 11–person jury).

Having explained the primary rationale for finding the deviation from Rule 24(c) here to be waivable, we note that the case law virtually compels such a result, anyway. In *United States v. Davis,* 608 F.2d 698, 699 (6th Cir.1979), this court held that the defendant had waived his right to object to a post-submission substitution in the jury when he voluntarily selected substitution out of three suggested options: (1) proceeding with an 11–person jury; (2) postponement of trial until the return of the absent juror; and (3) substitution. Although *Davis* does not actually mention Rules 23(b) or 24(c), and although it was decided before the 1983 amendment to Rule 23(b), the decision has been followed by other post-amendment courts, most notably by *United States v.*

*Josefik,* 753 F.2d 585, 588 (7th Cir.), *cert. denied,* 471 U.S. 1055, 105 S.Ct. 2117, 85 L.Ed.2d 481 (1985), where the Seventh Circuit, explicitly relying on *Davis,* rejected the view that the substitution component of Rule 24(c) could not be waived. The court stated that the defendant should be permitted to choose to "take his chances with the jury in its reconstituted form," and it noted that while there might be some "limits to waiver" of a jury trial and attendant rights, there was nothing inherently objectionable in a post-submission substitution procedure. *Id.* Similarly, the Eleventh Circuit, relying on *Josefik,* held that the defendant waived any Rule 24(c) challenge when he "knowingly consent[ed] to the addition of an alternate juror." *United States v. Guevara,* 823 F.2d 446, 448 (11th Cir.1987). As the *Guevara* court observed, "A criminal defendant quite reasonably may prefer to have his fate decided by a jury of twelve rather than a smaller group of eleven. The additional juror is one more person whom the government must convince beyond a reasonable doubt of the defendant's guilt." *Id.*

Finally, we should point out that while allowing the substitution component of Rule 24(c) to be waivable might limit the defendant's ability to raise certain arguments on appeal, it clearly expands the defendant's choices at the trial level. We do not wish to discourage district courts from exploring all possible options when faced with a potential mistrial arising out of a predicament in the jury. Of course, a court can still compel an 11–juror verdict under Rule 23(b) if only one juror needs to be excused after deliberations have begun. In general, however, the district court should present the parties with the appropriate alternatives and permit them to select the one that best accords with their particular situation. If the defendant strongly prefers substitution to a less–than–12-person jury, or a less–than–11-person jury, there appears to be little or no reason for the trial court to deny him that expanded choice. There *is* reason, on the other hand, for the appellate court to deny a defendant's attempt to overturn that expanded choice, if it ends up producing a result with which the defendant is still not pleased.

In sum, we hold that where, as here, the defendant *affirmatively consents* to a procedure in which alternate jurors are silently present during initial jury deliberations, in anticipation of a possible substitution, and alternates ultimately are substituted, the defendant waives any challenge to such a procedure under Rule 24(c). Naturally, though, the defendant does not necessarily waive all related objections. For example, as in the instant case, the defendant can still object to any jury instructions concerning the substitution, and if satisfactory procedures for substitution cannot be devised, he may certainly be permitted to withdraw his consent before it is too late. Here, however, Cencer only raised a single, vague objection to the jury instruction (discussed below), and Cencer did not attempt to retract his consent to substitution. Because the Advisory Committee Notes simply do not speak to the issue of waiver in formulating Rules 23(b) and Rule 24(c), we do not see why Rule 24(c)'s prohibition against post-submission substitution cannot be waived. In our opinion, the far better rule is that it can.

### III. THE JURY INSTRUCTION

Cencer is thus left with the only argument that he did not waive: that the district court erred in its supplemental instruction to the jurors regarding the status of their partial deliberations. In general, we reverse a district court on the basis of its jury instructions "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Tines,* 70 F.3d 891, 896 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1280, 134 L.Ed.2d 225 (1996) (citing *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 73 (6th Cir.1990)).

Cencer argues that the district court's explanation to the jury that the alternate jurors would have to "agree[ ] with the deliberations that have occurred" was insufficient. Tr. at 558. Cencer believes that more should have been required of the reconstituted jury—that rather than have the alternates "merely concur" in the prior deliberations once they were substituted, the jury should have been required to start from a "clean slate." Cencer cites *United States v. Phillips,* 664 F.2d 971,

990–91 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), for the proposition that a district court must follow meticulous procedures before allowing a post-submission substitution to be made, including questioning all jurors regarding their ability to start anew, confiscating all written materials previously prepared, and re-instructing the jurors to begin from the beginning. In *Phillips,* however, the substitute juror had not been present during prior deliberations, and so it was essential that the jury start all over again. Here, by contrast, the entire point of having the two alternates sit in the jury room during the first day was so that the jury would not have to go back to a "clean slate" the following week. Given the circumstances of the substitution, it was not inappropriate for the district court to instruct the jury as it did. The alternates had not been excluded from any deliberations, and the detailed procedures set forth in *Phillips* were therefore unnecessary. Viewed as a whole, the supplemental jury instruction was not "confusing, misleading, or prejudicial."

## IV. SUFFICIENCY OF THE EVIDENCE

 Cencer's final contention is that the district court erroneously denied his Rule 29 motion for judgment of acquittal because the evidence was insufficient to convict him. *See* Fed.R.Crim.P. 29(a). In reality, the evidence against Cencer was rather overwhelming. Several witnesses testified regarding Cencer's active involvement in drug trafficking. Tape-recorded conversations showed Cencer engaged in drug transactions. Although Cencer now argues, with respect to his money-laundering conviction, that the government failed to prove that he knew the money being plowed back into the Point Pub was proceeds from drug activity, I.R.S. Agent Thomas Himes directly testified that Cencer admitted to knowing Point Pub's operating money came from cocaine sales. In addition, Carlos Lopez, another government witness, stated that Cencer personally took the money from drug activity and used it to run the bar. Viewing the evidence "in the light most favorable to the prosecution," *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir.1993), *cert. denied,* 510 U.S. 1130, 114 S.Ct. 1099,

127 L.Ed.2d 412 (1994), the evidence was undoubtedly sufficient to sustain each of the convictions against the defendant.

## V. CONCLUSION

We reaffirm our decision in *United States v. Davis,* 608 F.2d 698, 699 (6th Cir.1979), and hold that Cencer waived any Rule 24(c) objection to the district court's postsubmission jury substitution in this case. We **AFFIRM** the judgment of the district court.