**UNITED STATES of America Plaintiff—Appellee,**

v.

**Lavelle MOORE Defendant—Appellant.**

No. 02–5639.

United States Court of Appeals, Sixth Circuit.

April 1, 2004.

Sunny A. Koshy, Asst. U.S. Attorney, U.S. Attorney's Office, Terry J. Haycox, Asst. U.S. Attorney, U.S. Attorney's Office, Nashville, TN, for Plaintiff–Appellee.

Charles E. Waldman, Waldman & Associates, Memphis, TN, for Defendant–Appellant.

Before SUHRHEINRICH and CLAY, Circuit Judges; and GWIN, District Judge.*

## OPINION

GWIN, District Judge.

After a jury found appellant Lavelle Moore guilty of sixteen counts of drug, money laundering, and firearm violations in the Middle District of Tennessee, the district court sentenced Moore to eighty-five years imprisonment. With this appeal of right, Moore raises various claims of error. For the reasons that follow, we find none of his claims persuasive and AFFIRM the judgment of the district court.

## I. BACKGROUND

Appellant Moore came to the attention of federal officials during an investigation of drug trafficking and money laundering involving marijuana shipped from Los Angeles, California to Nashville and Memphis, Tennessee. On August 29, 2001, Moore's girlfriend Audrea Pipkin contacted the local police to report a domestic altercation between herself and Moore. As luck would have it, an Internal Revenue Service agent happened to be driving to Moore's home to serve Moore with a grand jury subpoena at the time police officers responded to the domestic dispute. The IRS was investigating fraudulent paperwork regarding the purchase of a Lexus automobile. The IRS believed Moore had purchased the automobile with drug sale proceeds.

After the police officers and the IRS agent arrived at Moore's home, Moore acknowledged to them that the Lexus, although titled in the name of ex-girlfriend

---

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

Kyndle Crigler, belonged to him. The police searched the vehicle and found a revolver and a semiautomatic assault weapon. On September 5, 2001, a federal grand jury returned a one-count indictment charging Moore with being a felon in possession of an assault weapon. The police arrested Moore the following day.

As we will discuss, Moore's appeal raises issues regarding whether his initial attorney had a conflict of interest. At Moore's initial court appearance, a magistrate judge appointed attorney Rayburn McGowan to represent Moore. On September 10, 2001, Moore waived his right to a detention hearing while represented by attorney McGowan. After this September 10, 2001, proceeding, McGowan ceased representation of Moore and attorney Kenneth Crites began representing Moore. At Moore's arraignment on September 20, 2001, attorney Crites represented Moore.[1]

Realizing that a superseding federal indictment involving drug charges was imminent, Moore gave a proffer statement to the Government on September 20, 2001. With attorney Crites present, Moore's statement provided details of his drug connections[2] The Government, however, declined to use Moore as a witness. Having obtained the name of drug dealer Kirk Campbell from Moore, the Government contacted Campbell. Campbell was awaiting trial on state drug-related charges. Attorney McGowan, Moore's prior attorney, represented Campbell in the state proceedings. Apparently, neither attorney

McGowan nor Assistant United States Attorney Koshy thought that this situation demanded Campbell secure a new counsel before speaking to the Government. After a discussion with law enforcement agents, Campbell agreed to cooperate with the federal Government and to testify against Moore at trial. The Government subsequently sought a superseding indictment against Moore that included drug and money laundering charges. On October 10, 2001, a federal grand jury returned a sixteen-count superseding indictment against Moore.[3]

With this factual background, we move on to consider the trial and the issues that are the subject of this appeal. The case went to trial on November 5, 2001, with a twelve-person jury and two alternates. During the first day of testimony, the Government called Moore's ex-girlfriend, Kyndle Crigler. With his appeal, Moore argues that the Government violated the trial court's order for the sequestration of witnesses when the Government discussed statements made during the trial before ex-girlfriend Crigler. Specifically, Moore says the Government discussed testimony of other witnesses in the presence of witness Crigler during a break in her testimony.

During its direct examination of girlfriend Crigler, the Government indicated that Crigler's testimony differed from her grand jury testimony. During Crigler's testimony, the court recessed the trial.

---

1. Attorney McGowan filed a motion to withdraw as counsel on September 25, 2001. The court granted the motion on September 26, 2001.

2. Attorney McGowan also appeared at this meeting. After Crites advised him that he would be representing Moore, McGowan left.

3. This indictment charged Moore with conspiracy to distribute and possess with intent

to distribute marijuana, maintaining places for the purpose of distributing and using marijuana, possession with intent to distribute and distribution of marijuana, using and carrying firearms during and in relation to drug trafficking offenses, conspiracy to commit money laundering, being a felon in possession of firearms, and money laundering. The indictment also included two forfeiture counts.

During that recess, the Assistant U.S. Attorney called Crigler's attorney to complain in a voice mail that she was backing away from her earlier testimony. Crigler was present during the phone call. In the conversation with Crigler's attorney, the Assistant U.S. Attorney relayed "what some people had said, some people other than me had said" the previous day. The record does not clarify what statements the Assistant U.S. Attorney described to Crigler's attorney while Crigler was present to hear. Moore complains that the Assistant U.S. Attorney violated the sequestration of witness order by discussing other witnesses's testimony in Crigler's presence.

Moore also says the trial court erred in allowing testimony from Kirk Campbell whom Moore's former attorney represented. On the third day of trial, defense attorney Crites informed the court of a "serious matter." Attorney Crites explained that the Government intended to call Kirk Campbell, a witness whom Moore's former attorney McGowan now represented. Because attorney McGowan had earlier represented appellant Moore in the case, attorney Crites contended that calling Campbell was prosecutorial misconduct and a violation of Moore's attorney-client privilege. Expressing dismay that the parties had not alerted the court earlier,[4] the court ordered Moore to file a motion outlining his position.

With that subsequently filed motion, appellant Moore moved for a new trial or alternatively to strike the testimony of witness Campbell. Responding, the Government asserted that Campbell's testimony was integral to its case. After receiving these positions, the court held an evidentiary hearing. During this hearing, attorney McGowan, appellant Moore, and witness Campbell testified. Defense counsel Crites did not call Assistant U.S. Attorney Koshy to the stand. At the hearing's conclusion, the district court found that while an ethical violation likely occurred, appellant Moore had not shown any evidence of prejudice. In fact, Moore was unable to show any facts that McGowan might have shared with the Government that Moore himself had not already provided the Government during an earlier proffer session. The court denied appellant Moore's motion to dismiss or alternatively exclude the testimony of Kirk Campbell. Subsequently, witness Campbell testified against Moore at trial.

For his third argument of error, Moore says the trial court erred to his prejudice regarding the seating of an alternate juror. On November 9, 2001, the parties concluded the presentation of evidence and made closing arguments. The trial had lasted five days and involved twenty-three witnesses. At the trial's conclusion, the court instructed the jury and discharged the alternate jurors. Because it was late in the day, the court asked the jurors to select a foreperson but recommended they wait to begin deliberations until after the holiday weekend. The jury entered the jury room and chose a foreperson. The jury then informed the court that they would begin deliberations after the three-day weekend.

When the jurors returned to deliberate the following Tuesday, the court received a juror's request to be excused. In describing his reason for seeking to be excused, the juror said his mother had died over the weekend, and he needed to travel the following day for the funeral. Since the jurors had not yet deliberated, the court

4. Defense attorney Crites was aware that the Government planned to use Kirk Campbell as a witness since the Friday before the trial. The Government had been aware as early as September 17, 2001.

announced its plan to call back one of the two alternates. Initially, defense counsel agreed with the plan to seat a dismissed alternate on the jury. After the Government complained about the unsuitability of the first alternate as a juror, the court decided to recall alternate number two.[5] Only after the trial court seated alternate number two with the other jurors in the jury lounge did defense attorney Crites object to the plan to recall a juror. While the court researched the law, the recalled alternate juror waited in the jury assembly lounge with the remaining eleven jurors. The court had earlier ordered the jurors, including the alternate juror, not to discuss the case in the jury lounge. After researching the law, the court discharged the recalled alternate juror and ordered the jury to deliberate with eleven jurors. The eleven-member jury subsequently returned a guilty verdict on all counts of the indictment.

With his appeal, Moore argues that three errors in the trial proceedings resulted in "plain error" so that we must give him a new trial. First, Moore argues it was plain error to allow an alternate juror whom the court had dismissed to be recalled. Second, Moore contends that prosecutor Koshy violated his right to a fair trial when he discussed the testimony "of certain government witnesses" in the presence of a government witness whom the trial court had not excused from the witness stand. Third, Moore asserts that it was plain error to deny a defense objec-

tion of prosecutorial misconduct when prosecutor Koshy knew before seeking a superseding indictment that the same lawyer had represented a government witness and Moore during part of the case. After considering each argument in turn, we find them to be without merit and AFFIRM the district court's conviction.

## II. ANALYSIS

The parties agree that we are to review appellant Moore's claims only for plain error. Fed.R.Crim.P. 52(b); *see United States v. Olano,* 507 U.S. 725, 730–31, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Under the plain error standard, an appellate court will correct an error only if the error (1) is plain, (2) affects substantial rights, and (3) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Cotton,* 535 U.S. 625, 632, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (citing *Johnson v. United States,* 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). The defendant bears the burden of persuasion under Rule 52(b). *Olano,* 507 U.S. at 741, 113 S.Ct. 1770.

### A. Recalled Alternate Juror

■ Moore argues that the trial court committed plain error when the trial court recalled and allowed an alternate juror to rejoin the other jurors who had already selected a foreperson. The Government contends that Moore "forfeited" this claim.[6] Additionally, the Government ar-

---

5. At one point during the trial, the first alternate had written a note to the judge expressing concern that the Government was holding something over ex-girlfriend Crigler that influenced her testimony in favor of the Government. Although the court found this to be a misinterpretation by the alternate, the Government expressed concern that she would not be able to be impartial. The court agreed.

6. Although using the term "forfeited," the Government appears to be arguing that Moore "waived" this claim. In *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court distinguished between a waiver and forfeiture of a claim by a criminal defendant. A forfeiture occurs when a defendant fails to timely assert a right. Federal Rule of Criminal Procedure 52(b) governs forfeited claims by reviewing

gues that Moore shows no prejudice from any error in recalling the discharged juror.[7]

Federal Rule of Criminal Procedure 24(c) provides:

Alternate jurors replace jurors in the same sequence in which the alternates were selected ... The court may retain alternate jurors after the jury retires to deliberate. The court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged.

The rule does not allow for alternate jurors to be recalled after being discharged. A court has discretion to retain alternate jurors when the jury retires to deliberate, but only if it does not discharge them and ensures that they do not discuss the case with anyone else. *See United States v. Huntress,* 956 F.2d 1309, 1314–17 (5th Cir. 1992), *cert. denied,* 508 U.S. 905, 113 S.Ct. 2330, 124 L.Ed.2d 243 (1993); *United States v. Josefik,* 753 F.2d 585, 587 (7th Cir.1985), *cert. denied,* 471 U.S. 1055, 105 S.Ct. 2117, 85 L.Ed.2d 481 (1985). In recalling the discharged juror here, the district court deviated from Rule 24(c).

The Government, however, argues that Moore waived this claim of error. After the district court excused a seated juror because of a death in his family, the court explained its plan to recall a dismissed juror. J.A. at 221. When the court decided to skip over alternate juror one, defense counsel objected. However, the objection complained about skipping over the first alternate. The objection did not complain generally about seating an alternate juror whom the trial court had excused. The court explained that it would call alternate two and then proceeded to do so. J.A. at 223. After the trial court had recalled and seated alternate juror two with the other jurors in the jury lounge, defense counsel Crites objected to the recall of any discharged jurors. J.A. at 224. Never did the court ask if Moore agreed to waive his right to not have a discharged juror called.

The Government contends that appellant Moore waived this claim by arguing for the substitution of the juror with alternate number one. Even if this alone were sufficient for a waiver of Rule 24(c), Moore subsequently withdrew his consent to seating an alternate whom the trial court had excused. *See United States v. Cencer,* 90 F.3d, 1103, 1109 (6th Cir.1996) (noting that if satisfactory procedures for substituting an alternate are not devised, a defendant "may certainly be permitted to withdraw his consent before it is too late"). Thus, we cannot conclude that Moore waived this claim of error.

■ Although we find the trial court erred in recalling a discharged alternate juror, we find it made no difference. Ap-

---

them under the plain error standard. The parties apparently agree that Moore forfeited his claim since Moore concedes that the plain error standard applies. However, a defendant may also waive an error by intentionally relinquishing or abandoning a known right. *Olano,* 507 U.S. at 733, 113 S.Ct. 1770. Waiver, unlike mere forfeiture, extinguishes a defendant's ability to raise the claim at all. This circuit has concluded that the right not to have alternate jurors sit with the jury after deliberations have started may be waived by a defendant. *United States v. Cencer,* 90 F.3d 1103, 1108–09 (6th Cir.1996) (finding substitution provisions of Rule 24(c) to be waiva-

ble); *see also United States v. Davis,* 608 F.2d 698, 699 (6th Cir.1979).

7. At some length, the Government also argues that the district court acted properly in allowing an eleven-member jury. This argument addresses an issue not raised by appellant on appeal. Even if appellant Moore had made the argument, Federal Rule of Criminal Procedure 23(b) gives district courts discretion to proceed with eleven jurors when excusing a juror is necessary after the jury has retired. *See United States v. Glover,* 21 F.3d 133 (6th Cir.1994).

pellant Moore does not show that the district court's decision was so prejudicial as to affect his substantial rights. *See* Fed. R.Crim.P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *Olano*, 507 U.S. at 733–34, 113 S.Ct. 1770.[8] As previously noted, the district court deviated from Rule 24(c) when it ordered the recall of a discharged juror.

Moore, however, has not shown how this error affected his substantial rights. Before recalling the alternate juror, the district court questioned the juror on the extent of his communications with others after being discharged. The juror responded that he had not spoken to anyone other than his wife about the trial. When speaking to his wife, the juror merely informed her that the trial involved drugs, guns, and money laundering charges.[9] In such a case, appellant Moore does not show prejudice from the court's error in recalling the discharged juror. *See United States v. Quiroz–Cortez*, 960 F.2d 418, 420 (5th Cir.1992) (while the better practice is to go on with eleven jurors, no prejudice resulted when district court instructed the alternate juror not to discuss case upon being discharged and alternate confirmed she had not when recalled); *United States v. Guevara*, 823 F.2d 446, 448 (11th Cir. 1987) (affirming substitution of alternate juror after deliberations began because district court questioned alternate to learn if juror had discussed case with anyone); *United States v. Hillard*, 701 F.2d 1052, 1058 (2d Cir.1983) (allowing juror substitution where district court interviewed alternate to decide whether alternate could deliberate fully and fairly).

More importantly, the recalled juror never deliberated with the other jurors. Although he had contact with the other jurors in the jury lounge, the district court had ordered that the jurors not begin deliberating. The district court excused the alternate before deliberations began. Courts should assume that jurors follow such instructions. *See Francis v. Franklin*, 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Since appellant Moore presents no evidence that the jurors did not follow the court's instructions, we presume that no deliberations occurred in the jury lounge while in the presence of the recalled alternate. Absent such deliberations, the recalled alternate juror could in no way taint the deliberative process of the other jurors. Considering these facts, we find no possibility that the error of recalling the discharged juror prejudiced Moore. The court's failure to follow the letter of Rule 24(c) is therefore harmless error.

### B. Sequestration Order Violation

■ Moore next argues that the Assistant U.S. Attorney violated his Sixth

---

**8.** Although the parties suggest that all claims should be reviewed under the plain error standard, this claim arguably is more appropriately analyzed for harmless error under Rule 52(a) since appellant Moore raised the error before the trial court. Regardless, the claim fails even under the more generous harmless error standard.

**9.** The Court: . . . let me ask you-you were dismissed from the jury on Friday. Let me ask you, have you discussed this case with anyone after you were dismissed from the jury?

Mr. Suren: Your Honor, I spoke with my wife and I told her about the case in the sense that I said it was about drugs, guns, and money laundering. That was the extent of my conversation, and that's all I said to her.

The Court: Okay. You haven't discussed it with anyone else?

Mr. Suren: I have not discussed it with anyone else, Your Honor.

The Court: Have you read anything about it or seen anything about it on the media or anything of that nature?

Mr. Suren: No, Your Honor.

J.A. at 296.

Amendment right to a fair trial when the prosecutor "discussed the testimony of certain government witnesses" in the presence of a witness scheduled to be recalled, violating the court's sequestration order. We find that Moore has offered no evidence that the Government's attorney violated the court's sequestration order.

Federal Rule of Evidence 615 states that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." The reach of this rule is an unresolved matter. We recently observed that circuits disagree about whether Rule 615 extends beyond the courtroom to permit a court to preclude out-of-court communication between witnesses about the case during trial. *United States v. Solorio,* 337 F.3d 580, 592 (6th Cir.2003), *cert. denied,* — U.S. —, 124 S.Ct. 850, 157 L.Ed.2d 723 (2003). As in *Solorio,* we need not today resolve the issue of the scope of Rule 615. Even assuming that the rule extends outside the courtroom, we conclude that Moore simply has not met his burden of showing any evidence of a Rule 615 violation.

Here, the district court invoked Rule 615 before opening statements. On the second day of trial, Moore's ex-girlfriend Kyndle Crigler testified. After releasing the jury for the day, the district judge commented that Crigler was changing her testimony from her prior grand jury testimony.[10] The following day, ex-girlfriend Crigler continued her testimony. During cross-examination, defense attorney Crites questioned Crigler in the following exchange:

Q. Ms. Crigler, you had-subsequent to your testimony yesterday, did you have a conversation with anyone in the U.S. Attorney's office?

A. Yesterday?

Q. Yesterday evening after you testified.

A. Yes.

Q. Now, did—did Mr. Koshy talk to you?

A. Yes.

Q. Okay. Did you feel threatened or intimidated in any way by that conversation.

A. Yes and no.

Q. Did it cause you to reevaluate your testimony in any way?

A. No.

J.A. at 177–78.

On redirect, Assistant U.S. Attorney Koshy clarified the conversation that had taken place in the following exchange:

Q. And I relayed to Mr. Camp [Krigler's attorney] on his voice mail what had happened in the court?

A. Yes.

Q. What some people had said, some people other than me had said?

A. Yes.

Q. And did I relay all that accurately to Mr. Camp?

---

**10.** The Court:....This witness obviously is backing up on testimony, and Mr. Koshy is surprised by her testimony. And so I would like you, for the record, to clarify a little more what your objection is.

Mr. Crites: Okay, I will, Your Honor. I think it is improper examination ...

The Court: You may be under state practice rules. The federal rules are pretty clear that you can impeach your own witness if you need to. And as I say, my perception is that we have a witness who has backed up on her grand jury testimony, and the person who put her on is surprised. Her lawyer is not here, unfortunately.

J.A. 236–37.

A. Yes

J.A. at 180.

Defense attorney Crites further cross-examined ex-girlfriend Crigler after this exchange. However, he did not ask any questions about a sequestration violation and did not move to strike Crigler's testimony. J.A. at 189. For the first time on appeal, Moore suggests that prosecutor Koshy violated Rule 615 by leaving the voice mail message. The Government, however, sets forth the reasonable explanation that the prosecutor was referring to the comments by the district judge made in front of Crigler. The appellant presents no evidence to support a different conclusion. Appellant Moore has failed to point to anything in the record that shows that "some people" referred to the other witnesses in the case. Without any evidence to suggest a Rule 615 violation, we find the claim fails.[11]

### C.   Prosecutorial Misconduct in Seeking the Superseding Indictment

■ In his final claim, Moore argues that Assistant U.S. Attorney Koshy committed misconduct when he sought a superseding indictment based on information provided by a witness represented by attorney McGowan. Defense attorney McGowan represented Moore at his detention hearing before Moore retained attorney Crites. During that representation, attorney McGowan and Moore met twice

for about fifteen or twenty minutes each time. While representing Moore, attorney McGowan also represented Kirk Campbell, an individual charged with drug-related offenses in state court. Before the Government sought a superseding indictment against Moore, Campbell gave a proffer to the Government.

With this assignment of error, Moore speculates that attorney McGowan may have given Campbell information that led to the Government seeking a superseding indictment against Moore. Further, Moore states that the prosecutor knew of the conflict but failed to inform Moore's defense counsel Crites until the Friday before trial.

On the third day of trial, defense attorney Crites moved to dismiss the entire case based on prosecutorial misconduct associated with this conflict. The district court held an evidentiary hearing on the motion. At this hearing, defense attorney McGowan, witness Campbell, and appellant Moore each testified. During this hearing, attorney McGowan denied that appellant Moore had even mentioned witness Campbell during their conversations. J.A. at 339. As described above, appellant Moore had given a statement to law enforcement. Moore admitted that he did not give attorney McGowan any information that he had not also given to the Government during his proffer and interview at jail.[12] Witness Campbell stated

---

11.   Moreover, the Government points out that commonsense belies Defendant's claim. If "some people" referred to other witnesses, ex-girlfriend Crigler would not have heard the testimony and would not have been able to testify that Assistant U.S. Attorney Koshy accurately reported the testimony on her attorney's voice mail.

12.   Q. Did you tell Mr. McGowan anything about any incriminating thing that you did that you did not tell the government when you

gave the proffer statement when Mr. Crites was representing you?
A. I can't think of anything right now ...
Q. My question is, what proof do you have that he leaked any information, anything you told him in confidence, that he told it to Kirk, or he told it to me, if he wasn't supposed to?
A. What proof do we-what do we have that he didn't?
Q. So is your answer that you have no proof?

that the information he provided in his proffer to the Government came solely from him. J.A. at 120. Since appellant Moore could not show any prejudice from attorney McGowan's or prosecutor Koshy's conduct, the district court denied the motion.

We review claims of prosecutorial misconduct *de novo* as mixed questions of law and fact. *United States v. Francis,* 170 F.3d 546, 549 (6th Cir.1999). In determining whether prosecutorial misconduct has occurred, we examine whether the prosecutor acted so egregiously as to warrant a court's sanctioning the behavior through a dismissal of the indictment or striking of the testimony of an important government witness.[13] *Cf. United States v. Green,* 305 F.3d 422, 429 (6th Cir.2002). Although the less-than-exemplary conduct of the Government may disturb a court, it does not warrant a dismissal in the circumstances of this case. *See United States v. Simpson,* 927 F.2d 1088, 1091 (9th Cir.1991) (noting that the judicial supervisory power of the actions of prosecutors outside the courtroom is very limited).

Like the district court, we express concern that the prosecutor did not recognize a potential for trouble associated with using the testimony of witness Campbell when witness Campbell's counsel had previously represented appellant Moore. J.A. at 274. However, Moore has not shown that the prosecutor's conduct prejudiced him. Without a showing of prejudice, we do not find the prosecutor's actions warrant the judicial remedy sought by Moore.

A. No.
Q. That's not your answer?
A. I said, what proof do we have that he didn't say it? That's all I've got to say.
J.A. at 392–94.

## III. CONCLUSION

For the forgoing reasons, we AFFIRM appellant Moore's conviction.

SUHRHEINRICH, Circuit Judge, concurring.

I concur for the most part in the majority's opinion. However, I disagree with the majority's intimations that the prosecutor's behavior here was in any way improper.

## I.

Lavelle Moore was indicted by a grand jury on September 5, 2001, and was arrested shortly thereafter. Prior to the indictment on September 4, 2001, Moore had appeared at the local jail, unrepresented, and had given a statement under *Miranda* waiver. On September 6, 2001, the court appointed Attorney McGowan to represent Moore. McGowan appeared with Moore at the initial hearing, held on September 6, 2001. A detention hearing was set for September 10, 2001. On that date, McGowan again appeared with Moore and indicated that Moore waived his detention hearing at that time.

On September 20, 2001, Moore appeared for a detention hearing and arraignment. He was represented at these proceedings by Attorney Crites, who had been retained by Moore's family. At the arraignment, McGowan orally requested permission to withdraw as appointed counsel and departed. He filed a formal motion on September 25, 2001, which was granted by the Magistrate Judge. Also on September 20, 2001, Moore gave a proffer. By the terms of the agreement, made in conjunction with the proffer,

13. The district court questioned the Government about the necessity of witness Campbell's testimony. The Government indicated that the testimony was integral to its case.

Moore waived his protection under the Rules of Evidence for statements made in the course of plea discussions. In addition, although the Government was not allowed to use Moore's direct words, the agreement allowed the Government to make derivative use of the information provided by the defendant.

The Government obtained a sixteen-count superseding indictment against Moore on October 10, 2001. Moore entered a plea of not guilty on October 19, 2001. On November 2, 2001, the prosecutor forwarded to Crites information that included the fact that McGowan, Moore's former counsel, represented Kirk Campbell, a potential witness. The case went to trial on November 5, 2001. On the third day of trial, Crites raised issues of breach of attorney/client privilege, ineffective assistance of counsel, and prosecutorial misconduct on the basis of McGowan's former representation of Moore and current representation of Campbell in the proceeding. Crites sought a dismissal of the superseding indictment, or in the alternative the exclusion of Campbell's testimony.

The court held an evidentiary hearing to determine whether there was a conflict or prosecutorial misconduct due to McGowan's prior representation of Moore. Moore, Campbell, and McGowan all testified at the hearing. Although the prosecutor was put on notice that he might also have to testify, he was not, ultimately, required to testify at the hearing. Moore testified first. He stated that he had consulted with McGowan concerning the charges of the instant action on two occasions for approximately fifteen to twenty minutes each. Moore also testified that he had imparted substantial information regarding his drug suppliers to McGowan, including information concerning Campbell. In addition, Moore testified that he told McGowan that he and Campbell were not very friendly. On cross examination Moore admitted that he did not tell McGowan anything that he did not independently tell the Government in his *Mirandized* statement or his proffer. He further admitted that he had no proof that McGowan had leaked any information to Campbell.

McGowan testified after Moore. He stated that, at the time of his appointment to represent Moore, he was unaware of a conflict of interest due to his representation of Campbell. McGowan testified that his representation of Moore was limited to two meetings. He testified that he did not have any detailed discussions with Moore about the quantity of drugs involved. He further stated that Campbell's name was never mentioned in any of his discussions with Moore. According to McGowan, he first learned that Campbell, who he represented in a state action, was involved in Moore's case approximately one week after his representation of Moore terminated. McGowan testified that he was informed of the potential conflict when the prosecutor called to inform him of Campbell's involvement in Moore's case. He indicated that the prosecutor did not question him about his representation of Moore. McGowan stated that he considered withdrawing as Campbell's counsel, but after carefully considering the issue, he did not see how there would be a conflict. He further testified that he did not provide Campbell with any information he received from Moore and that his prior representation of Moore did not affect his representation of Campbell in anyway.

Campbell testified as well. He stated that he was not influenced in any way by the fact that McGowan had previously represented Moore. He further stated that all of the information contained in his proffer was from personal knowledge and was not obtained from McGowan.

In response to questions from the court, the prosecutor stated that it was his understanding that McGowan did not gain any confidences from Moore. He also stated that he had asked McGowan whether he thought there was any conflict, and McGowan did not.

Following the evidentiary hearing, the court ruled that, although it might have been an ethical violation for McGowan to continue his representation of Campbell in the Moore case, Moore could not show any prejudice because he did not allege any fact that he had told McGowan that he had not independently relayed to the government in his confession or proffer. More importantly, the court found that there was no evidence that McGowan failed to preserve the confidences of Moore. Furthermore, the court found, based on testimony, that both McGowan and Campbell would not have acted any differently if McGowan had not briefly represented Moore. Therefore, the court denied Moore's motion because Moore could not show an adverse effect on the outcome of his case.

Although couched in terms of prosecutorial misconduct, at best Moore has raised a conflict of interest question with regard to McGowan. While it may have been the wiser course for Campbell to retain new representation in this case, the evidence does not show an actual conflict. Further, although Moore intimates that there was prosecutorial misconduct, he is unable to supply any proof of improper conduct. There is absolutely no evidence that the prosecutor was influenced by his knowledge of a potential conflict. In fact, it was only after the prosecutor had determined a course of action and decided to obtain Campbell's proffer that he discovered the potential conflict, while researching Campbell's state proceedings. There is no evidence that once he discovered the potential conflict, the prosecutor coerced the proffer or influenced McGowan's advice to Campbell. On the contrary, McGowan testified that he considered the issue and determined that there was no conflict. The prosecutor relied on McGowan's judgment. Since McGowan was the only party in possession of the facts relating to the substance of his representation, this reliance was reasonable.

Finally, neither Moore nor the majority have provided any case law or authority that would impose a duty upon the prosecutor to have acted differently in this case. On the question of prosecutorial misconduct both Moore and the majority focus solely on the issue of prejudice to Moore from any *potential* misconduct. Before there can be prejudice, however, there must be misconduct. Although the majority opinion leaves doubt, there is not even a hint of untoward behavior on the part of the prosecutor in bringing this case.