UNITED STATES of America,

v.

Thomas **HARGROVE**, Defendant.

**Crim. Action No. 98cr10185–2–NG.**

United States District Court,
D. Massachusetts.

June 15, 2009.

Theodore B. Heinrich, United States Attorney's Office, Boston, MA, for Plaintiff.

### MEMORANDUM AND ORDER RE: MOTION FOR RETROACTIVE APPLICATION OF SENTENCING GUIDELINES

NANCY GERTNER, District Judge.

## I. OVERVIEW

On May 12, 1999, Thomas Hargrove ("Hargrove") was charged in eight counts of a seventy-three-count, multi-defendant superseding indictment. Pursuant to a plea agreement, he pleaded guilty on May 23, 1999, to one count of distribution of and possession with intent to distribute cocaine base. That offense involved 27.5 grams of crack cocaine. The government dismissed the remaining counts. On June 7, 2000, I sentenced him to 188 months in prison and four years of supervised release.

On May 5, 2008, Hargrove filed a pro se petition for sentence modification based on the retroactive revisions to the Sentencing Guidelines for crack cocaine. I appointed counsel, took additional briefing on the matter, and held a hearing on February 25, 2009. I now resolve the pending motion.

## II. STATE OF THE LAW

Congress provided for the reduction of sentences based on amendments to the U.S. Sentencing Guidelines (U.S.S.G.) in 18 U.S.C. § 3582(c)(2):

> In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o ), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

On November 1, 2007, the Sentencing Commission amended U.S.S.G. § 2D1.1, reducing the base offense level for most quantities of crack cocaine by two levels effective May 1, 2008. U.S.S.G. Supp. to App. C, amend. 706 (2008).[1] On December 11, 2007, the Commission voted unanimously to make that amendment retroactive, effective March 3, 2008. *Id.,* amend. 713. The applicable policy statement issued by the Commission states that a reduction "is not consistent with this policy statement and therefore is not authorized" if the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B).

In light of these cocaine amendments, Hargrove moves for a reduction under § 3582(c)(2). According to the statute, to be eligible for such a reduction, he must show that his original sentence was "based on" the drug quantity guidelines that were subsequently lowered. Hargrove argues that his sentence was indeed *based on* the

---

1. This was done in recognition that the 100-to-1 disparity between crack and cocaine drug sentencing "significantly undermines various congressional objectives set forth in the Sentencing Reform Act and elsewhere." U.S.S.G. Supp. to App. C, amend. 706 ("Reason for Amendment"). The Commission called for Congress to correct the disparity enshrined in the mandatory minimums of the Anti Drug Abuse Act of 1986. It further explained that "the problems associated with the 100-to-1 drug quantity ratio are so urgent and compelling that this amendment is promulgated as an interim measure to alleviate some of those problems." *Id.*

pre-amendment crack guidelines because in the presentence report Probation calculated what the Guidelines range would have been, absent the career offender guidelines and because courts often consider that calculation in selecting a sentence. He argues that his offense level should now be reduced by two, giving him a total level of 29 and criminal history category of VI, for a Guidelines range of 151 to 188 months.

The First Circuit explicitly rejected the argument Hargrove advances in *United States v. Caraballo*, 552 F.3d 6 (1st Cir. 2008), cert. denied, —— U.S. ——, 129 S.Ct. 1929, 173 L.Ed.2d 1075 (2009). In that case, the defendant pleaded guilty to two counts of crack cocaine distribution in April 2005. The court calculated that crack guideline range, a range then trumped by the career offender provisions. The career offender guidelines raised the defendant's base offense level from 22 to 32, with a three-level reduction for acceptance of responsibility. With a total offense level of 29 and a criminal history category of VI, the Guidelines range was 151 to 188 months. The district court granted a variance based on the defendant's deteriorating health and imposed a sentence of 108 months. Following the amendments to the drug quantity guidelines discussed above, the defendant petitioned for a reduction. The First Circuit found him ineligible:

> Refined to bare essence, the defendant's suggestion is that, even though his sentence was not dictated exclusively by the crack cocaine guideline, it was 'based on' that guideline because that guideline was a way station along the road that the district court traveled in arriving at the appropriate sentencing range. He insists that, given this imbrication, Amendment 706 unlocks section 3582(c)(2) and authorizes the district court, on his motion, to recalculate his sentencing range and determine anew, in light of generally applicable sentencing factors, *see* 18 U.S.C. § 3553(a), whether a sentence reduction is warranted....

> The defendant's argument that this oblique reference to the crack cocaine guideline was enough to trigger section 3582(c)(2) disregards the way in which the career offender guideline operates.... [T]he career offender guideline provided the higher offense level and, thus, yielded a more punitive sentencing range. That was the range that the district court actually used at sentencing. Consequently, to say that the defendant's sentence was 'based on' the crack cocaine guideline strains credulity. Reaching that result would require us to rewrite section 3582(c)(2) and, in the bargain, invade Congress's exclusive preserve.

*Id.* at 9–10; *see also, e.g., United States v. Cruz*, No. 96–76–P–H–01, 2008 WL 2967527 (D.Me. July 31, 2008) (ruling that defendant was not eligible for reduction based on crack revisions because his "status as a career offender drove his 360–month sentence, not his drug quantity").[2]

The Second Circuit has taken a distinctly different approach to this issue. In *United States v. McGee*, 553 F.3d 225 (2d Cir.2009), the sentencing judge calculated the appropriate career offender range and then departed downward because that range overstated the defendant's criminal

---

**2.** Hargrove cites *United States v. Jenkins*, 537 F.3d 1 (1st Cir.2008), to support his argument for a sentence reduction. In that case, the court upheld a sentence as reasonable but suggested that the defendant, who was sentenced based on the career offender guidelines, could file a motion with the trial judge for a sentence reduction based on the crack amendments. *Jenkins* came down before *Caraballo* and was superceded by it.

history. The judge *explicitly* stated that he was departing "to the level that the defendant would have been in absent the career offender status calculation and consideration." *Id.* at 227 (internal quotation marks omitted). The cocaine base quantity guidelines produced a range of 92 to 115 months, and the judge sentenced the defendant to the high end of that range. The Second Circuit held that the decision was clearly "based on" the crack guideline range and that the district judge "would likely have considered a different sentence from the one imposed if the applicable crack guidelines had so provided." *Id.* at 228.

To be sure, the different results in *McGee* and *Caraballo,* may reflect the fact that the First and Second Circuits frame the issue differently. The First Circuit believes that "based on" refers to the pre-departure range, the career offender range, while the Second believes it refers to the post-departure range.

Nevertheless, in my judgment, notwithstanding *Caraballo,* the First Circuit has not foreclosed the possibility of a more nuanced approach. In responding to the defendant's argument in *Caraballo* that the court's computation of the crack guidelines range meant his sentence was "based on" that range, the court remarked that such an "oblique reference" could not support his reading of the statute. 552 F.3d at 9. The court's phrasing suggests that a more direct reference to—and a more direct reliance on—the crack guideline may have made this a different case. To be sure, the court stated of § 3582(c)(2) that "[t]he term 'sentencing range' clearly contemplates the end result of the overall guideline calculus, not the series of tentative results reached at various interim steps in the performance of that calculus." *Id.* at 10. But it did not confront a case in which the final result as in *McGee*—rather than the interim steps—in fact rested on a guidelines sentence driven by drug quantity.[3]

Such an approach—considering the post-departure result—is particularly significant in career offender cases. Long before *Booker,* the career offender guidelines were only a starting point. *See United States v. Ennis,* 468 F.Supp.2d 228, 234 (D.Mass.2006). Departures were readily available because the criminal history overstated the defendant's culpability; indeed, the scholarly literature makes clear that they were regularly used. *See, e.g.,* Michael S. Gelacak et al., *Departures Under the Federal Sentencing Guidelines: An Empirical and Jurisprudential Analysis,* 81 Minn. L.Rev. 299, 356 (1996). The discretion now celebrated in *Booker,* was long available and used because of the widely recognized flaws in the career offender guidelines. As such, a judge who departed from the career offender guidelines would often have to consider and grapple with the regular crack cocaine guidelines.

Ultimately, the question should be not an abstract line about pre-departure or post-departure computations but what the district court actually said and did at the original sentencing. If the crack guidelines played no role in the final sentence, then there should be no retroactivity. If the final sentence was in fact based on the crack guidelines in some way—for example, if the district court judge departed specifically to the guidelines range called for by the quantity of cocaine base at issue—then relief should be available un-

**3.** In *Caraballo,* the sentencing judge departed downward, but he did so based on the defendant's medical condition and not with reference to the otherwise applicable drug quantity guidelines.

der § 3582(c)(2). This approach is more faithful than *Caraballo*'s bright line rule to the fact-driven, offender-specific enterprise that is sentencing and in particular, career offender sentencing.[4]

Indeed, assuming that the language of 18 U.S.C. § 3582(c)(2) is ambiguous—that "based on" could refer either to the pre-departure range, as the First Circuit found, or the post-departure range, as the Second Circuit suggests—the rule of lenity counsels that the Court adopt the latter interpretation. As the Supreme Court has previously held and recently confirmed, the rule of lenity is to be invoked in cases of "grievous ambiguity." *Huddleston v. United States*, 415 U.S. 814, 831, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974); *see also United States v. Hayes*, —— U.S. ——, 129 S.Ct. 1079, 1089, 172 L.Ed.2d 816 (2009). Here, the Sentencing Commission's regulations do not resolve the ambiguity in the statute. Under U.S.S.G. § 1B1.10(a)(2)(B), a reduction is not authorized if a retroactive amendment would not "have the effect of lowering the defendant's applicable guideline range," but the phrase "applicable guideline range" is itself ambiguous.

A final point: The crack cocaine guidelines have been widely criticized as being fundamentally unfair. Scores of defendants are serving onerous imprisonment terms because of them. That alone should propel the courts to a conclusion other than that reached in *Caraballo*.

## III. *HARGROVE'S ELIGIBILITY FOR A REDUCTION*

Whatever my concerns about the scope of the *Caraballo* decision, however, it clearly forecloses relief for Hargrove. He admitted as much in a status report filed by counsel on the significance of the case. *See* document # 2014 (arguing simply that *Caraballo* was wrongly decided).

Nor would he fare any better under the Second Circuit's approach. At Hargrove's original sentencing, I was well aware that I could depart from the career offender guidelines. I had done so with respect to his co-defendants. *See United States v. Lacy*, 99 F.Supp.2d 108, 121–22 (D.Mass. 2000). I concluded that the range was appropriate in Hargrove's case because his criminal history included instances of violence.

Without the career offender guidelines, Hargrove's offense level would have been 27—base offense level 28 for cocaine base between 20 and 35 grams, § 2D1.1(c)(6), plus 2 because the offense was committed close to a school, § 2D1.2, minus 3 for acceptance of responsibility, § 3E1.1(a), (b). Given criminal history category VI, his guidelines range would have been 130 to 162 months.

But Hargrove's sentence was entirely driven by the career offender guidelines. Under 21 U.S.C. § 841(b)(1)(B), the maximum penalty for more than five grams of cocaine base is forty years. Under U.S.S.G. § 4B1.1(b)(B), an offense that carries a statutory maximum of over twenty-five years carries an offense level of 34. Factoring in the reduction for acceptance of responsibility, his total offense level was 31 for a guidelines range of 188 to 235 months. I sentenced him to the low end of this range. Because I did not depart from the career offender guidelines, under *Car-*

---

**4.** It appears that the Eleventh Circuit may also favor such an approach. In *United States v. Moore*, 541 F.3d 1323 (11th Cir. 2008), a case often cited for coming out the same way as *Caraballo*, the court noted in dicta that there was no "indication that the court based [the defendant's] sentence on the guideline range that would have applied absent the career offender designation." *Id.* at 1330. The implication is that if the court had done so, as in *McGee*, the defendant might have been eligible for relief.

*aballo* Hargrove's ultimate sentence of 188 months was not "based on" a range that was subsequently lowered by the Commission.

## IV.  *CONCLUSION*

Based on the reasoning described above, the defendant's Motion for Retroactive Application of Sentencing Guidelines (document # 1967) is hereby ***DENIED.***

**SO ORDERED.**