**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0463n.06

Case No. 12-3635

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jun 27, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| MARIE TATE, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, GRIFFIN, and STRANCH, Circuit Judges.

**SILER, Circuit Judge**. In 2005, the district court sentenced Marie Tate to 168 months' imprisonment for a crack cocaine offense and being a convicted felon in possession of firearms. In 2010, Congress enacted the Fair Sentencing Act (the "FSA") and the Sentencing Commission promulgated amendments to the United States Sentencing Guidelines (the "Guidelines") to lower penalties for crack cocaine convictions. Consequently, Tate filed a motion under 18 U.S.C. § 3582(c)(2) for a sentence reduction pursuant to the FSA and the amended Guidelines. The district court denied her motion, reasoning that Tate was ineligible for relief under § 3582(c)(2). She appeals that decision, and for the reasons that follow, we **AFFIRM**.

**I.**

In 2004, Tate pleaded guilty to two counts of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g) and one count of possession with intent to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The plea agreement attributed 114 grams of crack cocaine to Tate, which generated a base offense level of 32 under USSG § 2D1.1 (the "drug quantity range"), but acknowledged that Tate was subject to a mandatory minimum sentence of 240 months' imprisonment.

At the sentencing hearing, the district court granted the government's motion for a downward departure based on substantial assistance, enabling the district court to pierce the mandatory minimum and sentence Tate to less than 240 months' imprisonment. The district court accepted the sentencing calculations the government provided, including a base offense level of 34 and a criminal history category of IV, that represented the lowest point on the sentencing matrix to encompass her mandatory minimum. It found that after accounting for her substantial assistance, Tate's adjusted offense level should be 32 with a criminal history category IV, which yielded a sentencing range of 168 to 210 months. Ultimately, the district court sentenced Tate to the low end of the range, 168 months' imprisonment.

In 2011 and again in 2012, Tate moved for a sentence reduction pursuant to the FSA and Guidelines amendments, and the district court denied both motions. Tate appeals the denial of her second § 3582(c)(2) motion and presents a single issue for our resolution: whether the district court erred in finding Tate ineligible for a sentence reduction.[1]

---

[1] Tate did not appeal the denial of her first § 3582(c)(2) motion.

**II.**

We typically review decisions concerning sentence reductions for abuse of discretion, but where the district court determined that the defendant is ineligible for a sentence reduction altogether, we review the decision de novo. *United States v. Johnson*, 569 F.3d 619, 622-23 (6th Cir. 2009). Tate contends that the FSA's new mandatory minimums and the amended Guidelines' lowered offense levels each independently operate to qualify her for a sentence reduction. Her contentions are not supported by law.

**III.**

Among its several sections, the FSA increased the amount of crack cocaine necessary to trigger the mandatory minimum sentences for drug offenders like Tate under 21 U.S.C. § 841(b)(1). Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010). Tate argues that the district court should apply the FSA to her 2005 sentence to reduce her 20-year mandatory minimum to 10 years. However, the FSA's "new mandatory minimums do not apply to defendants sentenced before it took effect," and neither the Constitution nor § 3582(c)(2) provides a basis for circumventing this interpretation. *United States v. Blewett*, 746 F.3d 647, 650 (6th Cir. 2013) (en banc), *cert. denied*, 134 S. Ct. 1779 (2014). Therefore, Tate's 240-month statutory mandatory minimum remains applicable to her sentence.

**IV.**

In Amendment 750, the Sentencing Commission altered the Guidelines to increase drug quantities that trigger certain penalties under USSG § 2D1.1, so that had Tate been sentenced according to the amended Guidelines, the base offense level for her drug conviction involving 114 grams of crack cocaine would have been 28 instead of 32. USSG App'x C, Amend. 750; *see United States v. Bell*, 731 F.3d 552, 554 (6th Cir. 2013). Thus, Amendment 750 lowered her

drug quantity range. Unlike the FSA's new mandatory minimums, this amendment is retroactive. USSG App'x C, Amend. 759; *see United States v. Jackson*, 678 F.3d 442, 444 (6th Cir. 2012). Tate argues that § 3582(c)(2) provides her an avenue through which she can take advantage of the amended Guidelines to obtain a sentence reduction.

District courts engage in a two-step inquiry to determine whether the defendant is entitled to a sentence reduction under § 3582. First, the defendant's sentence must have been "based on a sentencing range that has subsequently been lowered by the Sentencing Commission[.]" *United States v. Hameed*, 614 F.3d 259, 262 (6th Cir. 2010) (quoting 18 U.S.C. § 3582(c)(2)). Second, an amendment to the Sentencing Guidelines must have lowered the defendant's "applicable guideline range." *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010). Because we have already held that the FSA did not lower Tate's mandatory minimum but Amendment 750 did lower her drug quantity range, Tate must show that her sentence was "based on" the drug quantity range, which was also her "applicable guideline range."

**A.**

To determine whether a given sentence was "based on" a particular sentencing range, we must look to "what the district court actually said and did at the original sentencing." *Hameed*, 614 F.3d at 264 (quoting *United States v. Hargrove*, 628 F. Supp. 2d 241, 244 (D. Mass. 2009)). At sentencing, the district court took "into account the statutory mandatory minimum of 20 years and [] Tate's subsequent cooperation," and determined that her adjusted offense level was 32. It thus adopted the government's proposal to start with a base offense level of 34, the lowest offense level on the sentencing matrix that corresponded to the mandatory minimum at Tate's criminal history category, and reduce that by two levels for her substantial assistance. If based on the drug quantity range, the district court would have calculated a base offense level of 32,

not 34. Accordingly, the sentence was "based on" the mandatory minimum, not the drug quantity.

Tate contends that the drug quantity guideline was a relevant part of the district court's analytic framework. In the plea agreement, the parties agreed that her base offense level based on the amount of drugs attributed to her under § 2D1.1 was 32. At sentencing, the only reference the district court made that could possibly relate to the drug quantity range was that it accepted the calculations in the plea agreement, but it never mentioned the drug quantity range in imposing its sentence.

The allusion to the plea agreement alone does not support a conclusion that the district court based its sentence on the drug quantity range. We held in *Hameed* that "a district judge's mere calculation of the sentencing range under § 2D1.1 does not render a defendant's sentence 'based on' the [drug quantity] range if that range is subsequently trumped by another provision of the [G]uidelines." 614 F.3d at 262. Here, the district court did not even calculate the § 2D1.1 range—it simply mentioned the plea agreement that cited the § 2D1.1 drug quantity offense level and the 240-month mandatory minimum.

In *Freeman v. United States*, 131 S. Ct. 2685 (2011), Justice Sotomayor, whose opinion represents the binding decision of the split court, *see United States v. Thompson*, 714 F.3d 946, 949 (6th Cir. 2013), determined that "[t]o ask whether a particular term of imprisonment is 'based on' a Guidelines sentencing range is to ask whether that range serves as the basis or foundation for the term of imprisonment." *Freeman*, 131 S. Ct. at 2695 (Sotomayor, J., concurring). Using this definition, we held in *Thompson* that the simple fact that the district court "acknowledged that the sentence contemplated by the plea agreement was 'sufficient and not greater than necessary to comport with'" factors necessary to obtain a downward variance,

was insufficient to infer that the court's sentence was "based on" the drug quantity range. *Thompson*, 714 F.3d at 950. The district court based its sentence on the career offender range, not the drug quantity range. *Id.* Here, the district court's mere reference to the plea agreement is insufficient to satisfy the "based on" requirement of the § 3582(c)(2) test. Instead, it began its sentencing calculation at the offense level that corresponded to the mandatory minimum and departed downward from there.

We addressed an analogous situation in *United States v. Williams*, 512 F. App'x 594 (6th Cir. 2013). In that case, the defendant pleaded guilty to three counts of crack distribution and one count of being a felon in possession of a firearm. *Id.* at 596. At sentencing, the district court acknowledged that his base offense level was 32 under the § 2D1.1 drug quantity table, but declared that the defendant was subject to a 20-year mandatory minimum. *Id.* It applied an offense level of 34, which corresponded to the 20-year mandatory minimum, before awarding a two-level decrease for acceptance of responsibility, granting a two-level downward departure for substantial assistance, and sentencing the defendant to 135 months' imprisonment. *Id.* at 598. We agreed with the district court's decision to deny the motion for a sentence reduction, because the defendant's sentence was not factually "based on" a sentencing range that had been subsequently lowered—the § 2D1.1 drug quantity range. *Id.*

The outcome in *Williams* is consistent with our prior decision in *Johnson*. *Id.* The defendant in *Johnson* was convicted of conspiring to distribute between 500 grams and 1.5 kilograms of crack cocaine, which generated a Guidelines sentencing range of 235 to 293 months under § 2D1.1, but he was also subject to a 240-month mandatory minimum. *Johnson*, 564 F.3d at 420. Therefore, his "effective Guidelines range was 240 to 293 months of imprisonment." *Id.* at 421. The district court granted him a downward departure and sentenced him to 108 months'

imprisonment. *Id.* We found that the district court based its sentence on the mandatory minimum, reasoning that "if [the defendant] were resentenced today, the amended Guidelines would still require a sentence of 240 months, and the court would be departing from this same 240-month baseline if again presented with the government's substantial-assistance motion." *Id.* at 423. At Tate's resentencing, the district court would likewise still depart from the 240-month mandatory minimum. Our decisions in *Williams* and *Johnson* mandate a conclusion that Tate's sentence was not based on the drug quantity range.

Tate argues that we should follow *Jackson* to reach a contrary conclusion. This case is readily distinguishable from *Jackson*, wherein we determined that "[w]hen the original sentencing judge decides to vary from the career offender guideline range to some other range, it is fair to say that the sentence imposed is 'based on' the adopted range and not the career offender range." 678 F.3d at 444. The district court in *Jackson* departed downward from the career offender range to the drug quantity range, but here, the district court departed from the mandatory minimum downward based on Tate's substantial assistance; it did not depart to another range. *Id.* Moreover, *Jackson* has limited application in § 3582(c)(2) proceedings because that case involved a unique procedural posture: we reviewed the defendant's sentence on direct appeal, "in the immediate wake of the [passage of the FSA] after a district judge explicitly delayed sentencing in hopes of the Act's imminent passage." *United States v. Riley*, 726 F.3d 756, 761 (6th Cir. 2013). Accordingly, the precedential authority of *Jackson* is minimal in this case.

Determining whether a sentence is based on a given Guidelines range "is a fact-driven, common-sense inquiry about whether a sentence is 'derived exclusively' from a particular sentencing scheme." *United States v. McClain*, 691 F.3d 774, 778 (6th Cir. 2012). While "it

may be 'sufficiently clear that a district court used [the drug quantity range] to select a final sentence even though it did not say so,'" *id.*, when evaluating the particular circumstances of Tate's sentencing, we are compelled to hold that the district court did not base its sentence on the drug quantity range. Rather, the district court's sentence was derived exclusively from the mandatory minimum, which remains unchanged by the FSA or the amended Guidelines. Accordingly, Tate's motion was properly denied.

**B.**

Were we to find otherwise, Tate would still fail to satisfy the second part of the § 3582 test requiring the Sentencing Commission to lower her "applicable guideline range." *See Pembrook*, 609 F.3d at 383. In Application Note 1A, the Guidelines define the applicable guideline range as "the guideline range that corresponds to the offense level and criminal history category determined pursuant to 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance." USSG § 1B1.10 App. n.1A. This provision further states that a sentence reduction is not authorized under § 3582(c)(2) if the relevant amendment "is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment)." *Id.* In these two sentences of Application Note 1A, the Guidelines twice explain that where a mandatory minimum exceeds an otherwise applicable range, the mandatory minimum becomes the applicable guideline range.

First, the applicable guideline range is determined by applying USSG § 1B1.1(a), a provision that contains eight subsections, the last of which reads: "For the particular guideline range, determine from Parts B through G of Chapter Five the sentencing requirements and

options related to probation, imprisonment, supervision conditions, fines, and restitution." USSG § 1B1.1(a)(8); *see United States v. Joiner*, 727 F.3d 601, 604-05 (6th Cir. 2013). Part G of Chapter Five incorporates the mandatory minimum into § 1B1.1(a) and provides that the mandatory minimum that exceeds an otherwise applicable range is the applicable guideline range. USSG § 5G1.1(b); *see* USSG § 1B1.10 App. n.1A; *Joiner*, 727 F.3d at 605. Second, Application Note 1A more specifically states that a defendant cannot satisfy the "applicable guideline range" requirement of the § 3582(c)(2) test where a statutory mandatory minimum trumps an otherwise applicable guideline range. *See* USSG § 1B1.10 App. n.1A. The district court's piercing of the mandatory minimum does not undermine the applicability of § 1B1.10. *See Joiner*, 727 F.3d at 605-06; *Williams*, 512 F. App'x at 600-01.

Because Tate's mandatory minimum exceeded her drug quantity range, the mandatory minimum became her applicable guideline range. The new mandatory minimums in the FSA do not apply to defendants sentenced before its passage, so Tate's applicable guideline range has not been lowered and remains 240 months. *See Joiner*, 727 F.3d at 609.

We have previously found each of Tate's arguments in opposition unavailing. Her position that the applicable guideline range must be distinct from the mandatory minimum sentence based on the intentional varied usage of the terms "range" and "sentence" in §§ 1B1.1(a) and 5G1.1 has been rejected. *See Joiner*, 727 F.3d at 606; *Williams*, 512 F. App'x at 601. We have also rejected Tate's contention that USSG § 1B1.10(b)(2)(B), which permits a court to reduce a sentence to below the applicable guideline range had it also done so in the original sentencing, would be rendered obsolete under our construction of the term applicable guideline range. *See Joiner*, 727 F.3d at 606-07; *Williams*, 512 F. App'x at 602. Finally, our recent en banc decision in *Blewett* undermines Tate's argument that our interpretation of

§ 3582(c)(2) violates the notion of fundamental fairness that seeks to avoid the unjust result of more serious offenders and those not providing substantial assistance being able to take advantage of newly reduced guidelines, while less serious offenders and those providing substantial assistance are unable to obtain sentence reductions. As a result, we hold that Tate also fails to satisfy the applicable guideline range requirement for obtaining a sentence reduction under § 3582.

AFFIRMED.

JANE B. STRANCH, concurring in the judgment. I reluctantly concur in the result reached by the majority opinion. I do so only because I am bound by recent cases denying sentencing reductions under 18 U.S.C. § 3582(c)(2) and USSG § 1B1.10 to defendants who were initially subject to a statutory minimum sentence, even though the statutory minimum sentence was not imposed because the government moved to depart downward for substantial assistance. *See United States v. Taylor*, 749 F.3d541 (6th Cir. 2014); *United States v. Joiner*, 727 F.3d 601 (6th Cir. 2013); *United States v. Williams*, 512 F. App'x 594 (6th Cir. 2013). The majority applies *Joiner*, *Williams*, and other cases to reach a similar result in Tate's case. I do not agree that Tate's sentence was "based on" a statutory minimum sentence that was not actually imposed at the original sentencing, nor do I believe that the statutory minimum should be denominated the "applicable guideline range" so that Tate is denied eligibility for a sentencing reduction under § 3583(c)(2) and USSG § 1B1.10(a)(1). Because Tate's sentence was actually "based on" the drug guideline, USSG § 2D1.1, which has been subsequently lowered by the Sentencing Commission, I would hold Tate is eligible for a sentencing reduction.

At the original sentencing, the district court attributed a drug quantity of 114 grams of crack cocaine to Tate. That drug amount, combined with a statutory sentencing enhancement, subjected Tate to a statutory minimum sentence of imprisonment of twenty years or 240 months under 21 U.S.C. § 841(a) & (b)(1)(A). Under the version of USSG § 2D1.1 in effect at the time of sentencing, Tate had a base offense level of 32, which increased by two levels to 34 due to her possession of firearms. With no reduction for acceptance of responsibility, Tate's total offense level remained at 34. Level 34 and criminal history category IV produced an advisory guideline range of 210 to 262 months of imprisonment. By operation of USSG § 5G1.1, the statutory

minimum raised the bottom of Tate's guideline range so that she faced 240 to 262 months of imprisonment.

The government did not ask the district court to sentence Tate to 240 months or more in prison. Instead, the government sought to reward Tate for the substantial assistance she provided to the government in investigating and prosecuting other defendants. To facilitate that reward, the government moved for downward departure, essentially under 18 U.S.C. § 3553(e) and USSG § 5K1.1, to allow the court to sentence Tate below the statutory mandatory minimum, which was also the bottom of the guideline range. The district court granted the motions and lowered Tate's offense level to 32. With a criminal history category of IV, the guideline range was 168 to 210 months. The court imposed a sentence of 168 months of imprisonment on the drug conviction and 120 months imprisonment on the firearm convictions, to be served concurrently.

Section 3553(e) provides that a district court "shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense," but *only* "[u]pon motion of the [g]overnment." Section 5K1.1 similarly provides that the district court "may depart from the guidelines" based on the defendant's substantial assistance, but *only* "[u]pon motion of the government." Only the government holds the power to render a cooperating defendant eligible for a substantial assistance departure from the statutory minimum sentence or the guideline range. *See United States v. Hawkins*, 274 F.3d 420, 426 (6th Cir. 2001). Once the government makes a motion for downward departure based on substantial assistance, the district court has authority to decide whether a departure is

appropriate and the extent of any such departure. *United States v. Rosenbaum*, 585 F.3d 259, 264 (6th Cir. 2009).

The government's conscious choice to make a motion under § 3553(e) and/or § 5K1.1 constitutes a knowing and voluntary waiver of the right to enforce the statutory minimum sentence or the guideline range. The Sentencing Commission recognized the government's ability to waive its rights in the commentary to § 2D1.1:

> Where a mandatory (statutory) minimum sentence applies, this mandatory minimum sentence ***may be "waived"*** and a lower sentence imposed (including a downward departure), as provided in 28 U.S.C. § 994(n), by reason of a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense." *See* § 5K1.1 (Substantial Assistance to Authorities).

USSG § 2D1.1, comment. (n.7) (2007). *See also* USSG § 2D1.1, comment. (n. 23) (2013).

Note the Sentencing Commission's language: a statutory minimum sentence may be ***waived***, and Congress provided by statute that only the government has the power to initiate the waiver by making a motion under § 3553(e). Similarly, the government ***waives*** the right to request a sentence within a guideline range when it makes a motion to depart downward for substantial assistance under § 5K1.1. The government's waiver allows the district court to impose a sentence below the statutory minimum or below the bottom of the guideline range. *See United States v. Doe*, 731 F.3d 518, 528 (6th Cir. 2013) (Cole, J., concurring in part and concurring in the judgment) (noting that a substantial assistance motion "effectively 'waive[s]' the mandatory minimum" and "[w]ithout a mandatory minimum at work, nothing prevents Amendment 750 from having 'the effect of lowering' the sentence the [defendant] did receive"). *See also Taylor*, 749 F.3d at 552 (Donald, J., dissenting) (observing that the "sole function" of a § 3553(e) motion "is to render the normal statutory minimum inoperative").

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993). "Waiver, unlike mere forfeiture, extinguishes [the] ability to raise the claim at all." *United States v. Moore*, 93 F. App'x 887, 892 n.6 (6th Cir. 2004).

Where the government affirmatively chooses to move for a downward departure for substantial assistance under § 3553(e) or § 5K1.1 or both, the government ***waives***—that is, it intentionally relinquishes or abandons—its right to enforce the statutory minimum sentence or the guideline range. The government's waiver extinguishes its ability to make two arguments in a future sentencing reduction proceeding under § 3582(c)(2).

First, the government's waiver precludes it from asserting that the defendant's sentence was actually "based on" the very same statutory minimum sentence that the government knowingly and voluntarily waived at the original sentencing. Second, the government's waiver prevents it from contending that the "applicable guideline range" referred to in USSG 1B1.10(a)(1) is the statutory minimum sentence and therefore, the defendant is ineligible for a sentencing reduction because he has not shown that he was sentenced under a guideline range that "has subsequently been lowered as a result of an amendment to the Guidelines Manual." USSG § 1B1.10(a)(1).

We routinely enforce knowing and voluntary waivers of rights made by criminal defendants. S*ee e.g.*, *United States v. Hockenberry*, 730 F.3d 645, 672 (6th Cir. 2013); *United States v. Wendlandt*, 714 F.3d 388, 398 (6th Cir. 2013). We should likewise enforce knowing and voluntary waivers made by the government.

At Tate's original sentencing, the government waived the statutory minimum sentence of 240 months. Her sentence was, in fact, "based on" the drug guideline and not on the statutory minimum sentence. *See Freeman v. United States*, 131 S. Ct. 2685, 2695 (Sotomayor, J., concurring in the judgment) ("To ask whether a particular term of imprisonment is 'based on' a Guidelines sentencing range is to ask whether that range serves as the basis or foundation for the term of imprisonment.") Section 2D1.1 served "as the basis or foundation" for Tate's sentence. Because the sentence was "based on" a drug guideline that was subsequently lowered by the Sentencing Commission in Amendments 750 and 759, I would hold that Tate is eligible for a sentencing reduction under § 3582(c)(2) and USSG § 1B1.10. The district court should decide whether to grant Tate a sentencing "reduction comparably less than the amended guideline range" to reward her for her substantial assistance. USSG § 1B1.10(b)(2)(B).

Accordingly, if I were writing on a clean slate, I would find Tate eligible for a sentencing reduction and remand the case to the district court for resentencing. Where the government expressly *waives* application of a statutory minimum as it did here, we should enforce that waiver in a subsequent sentencing reduction proceeding under § 3582(c)(2). We should not allow the government to resurrect a position that it knowingly and voluntarily disclaimed at the original sentencing. The majority opinion, and cases cited therein, unfairly absolve the government of its express waiver and wrongly penalize the defendant by denying eligibility for a sentencing reduction that unquestionably exists.

I may be bound by our case precedent, but I am not required to agree with it. I concur only in the judgment.